W. W. BOGGESS *v.* D. C. MILAM *et al.*

(No. 9666)

Submitted April 3, 1945. Decided May 22, 1945.

*Harold A. Ritz, R. K. Talbott, Brown, Jackson & Knight, B. J. Pettigrew, Oliver D. Kessel* and *Harper & Baker,* for appellants.

*Robert B. Goodwin* and *W. F. Boggess,* for appellee.

KENNA, JUDGE:

This chancery proceeding was brought in the Circuit

Court of Jackson County by W. W. Boggess for the purpose of recovering his alleged proportionate interest in the net value of the entire production of oil and gas by the defendant lessee, United Fuel Gas Company, from a tract of fifty-three acres in which he held no interest, but the lease of which had been unitized with that of an adjoining tract of one hundred sixteen acres, seventy-four ninetieths of which was also held by United Fuel Gas Company as lessee, the complainant being the owner of a one-tenth and M. M. Boggess the owner of a six-ninetieths, outstanding interest not covered by the lease of the one hundred sixteen acres to the United Fuel Gas Company nor by the unitization agreement, as he contends, entirely blending the two leases and merging the two tracts into one for operating purposes.

The contention of the plaintiff is, in effect, that the unitization agreement, so far as the rights of the lessee and its lessors—his co-tenants—are concerned, destroyed the identity, as separate tracts, of both the fifty-three acres and the one hundred sixteen acres, making him a tenant in common, but not a co-lessor, with all persons having an interest in the oil and gas underlying both boundaries, so that the unauthorized removal of a fractional part of the oil and gas from the fifty-three acre tract in which he had no interest prior to the unitization agreement constituted waste as to that part or as to his one-tenth interest in the oil and gas underlying the one hundred sixteen acres not covered by the lease to the United Fuel Gas Company. The complainant claims no title of any sort in the fifty-three acres upon which the well giving rise to the questions in controversy was drilled by the lessee; the equity he asserts is based entirely upon his admitted one-tenth unleased interest in the oil and gas underlying the adjoining tract of one hundred and sixteen acres.

The cause was submitted to the trial chancellor for decision upon the original bill and answers, demurrers thereto, an amended bill and answers and demurrers thereto, there being a number of necessary parties holding fractional interests in the oil and gas underlying the one

hundred and sixteen acres who appeared separately. We regard it as unnecessary to go into full detail as disclosed by the pleadings concerning transfers of title to the oil and gas except to the extent necessary in a discussion of the question raised upon this appeal.

The trial chancellor overruled the demurrers to the original and amended bills of complaint and, treating the answers as raising no material issue of fact, found in favor of the complainant against United Fuel Gas Company, D. C. Milam, Ova Ingram and Benjamin B. Brown for the sum of seven thousand, eighty-six dollars and forty-four cents, subject to the dower of Harriet Boggess therein, and upon the petition of the defendants decreed against, this Court granted this appeal.

From the uncontradicted averments appearing of record the following is established:

On May first, 1936, D. C. Milam, the fee owner, leased the tract of fifty-three acres to the United Fuel Gas Company. Shortly after November thirtieth, 1939, a gas well, the large production of which is here in controversy, was drilled on that tract. A statement of the intervening circumstances that gave rise to the complainant's alleged equitable interest in the production of this well follows:

In January, 1927, E. W. Boggess died intestate seised in fee simple with the adjoining boundary of one hundred sixteen acres, leaving Harriet Boggess, his widow, a dower interest therein, and W. W. Boggess, M. M. Boggess, Samuel S. Boggess, May Boggess Lewis and Ova Ingram, his sons and married daughters, each a one-fifth undivided interest therein.

In February, 1931, D. C. Milam, owner of the adjoining fifty-three acre tract, acquired title to the one hundred sixteen acre tract, subject to a reservation of one-half of the underlying mineral interests. W. W. Boggess, the complainant, is a party to this deed, so that his interest in the one hundred sixteen acres was thereby reduced from one-fifth in the whole to one-tenth in the minerals.

Remembering that the fifty-three acres owned in fee by D. C. Milam was, in May, 1936, leased to United Fuel

Gas Company, on November thirtieth, 1939, B. B. Brown and wife, May Boggess Lewis and husband and Ova Ingram and husband, supposedly owning thirty-eight ninetieths of the minerals underlying the one hundred sixteen acres, leased their part of the oil and gas to the United Fuel Gas Company. This instrument, together with a lease covering the Milam undivided thirty-six ninetieths interest in the oil and gas underlying the one hundred sixteen acres, dated the first day of May, 1936, gave to the United Fuel Gas Company a complete oil and gas leasehold upon the fifty-three acre tract and the one hundred sixteen acre tract, excepting from the latter tract a one-tenth undivided interest in the minerals owned by W. W. Boggess, and six ninetieths of the minerals owned by M. M. Boggess.

On the same day, November thirtieth, 1939, the owners of the oil and gas underlying both the fifty-three acre tract and the one hundred sixteen acre tract, excepting W. W. Boggess and M. M. Boggess, but including Harriet Boggess who was vested with a dower interest in the one hundred sixteen acre tract, executed with United Fuel Gas Company what is referred to as a unitization agreement, covering the interests of the parties as lessors and that of the United Fuel as lessee in both tracts, the purpose of which was to merge the leasehold interests of the lessors so that they would be entitled to share the royalties upon the production from any wells drilled thereon, to the extent that their proportionate interests in the entire acreage would entitle them, and to release the lessee from its implied obligation to develop the two tracts as separate units. This agreement, by its express terms, preserves the effect of the three leases held by United Fuel Gas Company upon the same boundaries of land to the extent that their terms do not conflict with those of the executed paper. The unitization agreement provides further that the drilling of one well upon the combined area shall constitute development to have the same effect as a well drilled on each tract, and that the lessee shall not be obligated to develop further. The agreement gives United Fuel an

option to drill within sixty days from its date, and provides that in the event it does not see fit to do so the agreement shall be of no effect. United Fuel did drill on the fifty-three acre tract within the time specified.

The lease on the one hundred sixteen acre tract and the unitization agreement were drawn so as to include W. W. Boggess as one of the parties of the first part, but he signed neither, and his bill expressly alleges that he refused to execute both.

The unitization agreement preceded the requirement of the Federal Government that tracts of less than one hundred sixty acres are not to be developed as separate units, but must be combined with other undeveloped land until that acreage is reached.

The early cases in this Court held that fee ownership of land did not include the absolute property in the underlying gas, but carried with it only a qualified property interest. *Wood County Petroleum Company* v. *West Virginia Transportation Company,* 28 W. Va. 210, 57 Am. Rep. 659. The *Wood County Petroleum Company* case was cited and approved in the case of *Hall* v. *Vernon,* 47 W. Va. 295, 34 S. E. 764, 49 L. R. A. 464, 81 Am. St. Rep. 791, in which Judge Brannon prepared the opinion of the Court, with which he did not agree, and Judge Dent wrote a concurrence citing authorities to sustain the views of the majority. Although the *Wood County Petroleum Company* case has not been expressly overruled in the many cases that followed involving the same principle, the direct contrary has been held in most, if not all, of the later West Virginia cases, the first of which, preceding the *Hall* case, was *Williamson* v. *Jones,* 39 W. Va. 231, 19 S. E. 436, 25 L. R. A. 222, in which a distinction is attempted. Among others, the *Williamson* case is followed by the cases of *Wilson* v. *Youst,* 43 W. Va. 826, 28 S. E. 781, 786, 39 L. R. A. 292; *South Penn Oil Company* v. *McIntyre,* 44 W. Va. 296, 28 S. E. 922; *Preston* v. *White,* 57 W. Va. 278, 50 S. E. 236; *The Manufacturers Light & Heat Company* v. *Knapp,* 102 W. Va. 308, 135 S. E. 1, all holding, in effect, that oil and gas in place is real estate and subject, as such, to absolute

ownership, this Court's most recent discussion of that question being in *Robinson* v. *Milam*, 125 W. Va. 218, 221, 24 S. E. 2d 236, which deals with a situation not unlike the one now under consideration, the difference being that the *Robinson* case involved the right of a grantee of a part of the surface and an undivided interest in the underlying oil and gas, subject to an oil and gas lease, to recover for the failure to develop his property, the claim being based upon the production from wells on adjoining tracts. This Court held that the claimant had no property that had been damaged.

Our first cases seem based upon the theory that oil and gas are both of an inherently migratory or vagrant nature, and our later cases upon the notion that each has a fixed situs until disturbed or released by the act of man.

It is difficult to perceive how the complainant, under either of the divergent theories that this Court has applied to the ownership of oil and gas, can claim a legal or an equitable interest to the oil and gas produced from the fifty-three acre tract. As a matter of fact, his actual ownership of oil and gas underlying the one hundred sixteen acre tract must be regarded as conjectural because in the absence of actual production nothing beyond a high degree of likelihood is shown. Under the theory of the *Wood County Petroleum Company* case the complainant holds no title: under the later cases he is unable to establish that there are or were oil and gas underlying the one hundred sixteen acres in which he holds an undivided interest, and that can be done only by discovery. We have been unable to find a case in which, with no contractual obligation to be considered, the owner of land has been held to have an interest, legal or equitable, in the oil and gas underlying adjoining or adjacent lands in which he holds no title.

On the contrary, the recent decisions are all to the effect that the owner of the fee is vested with title in the oil and gas underlying the boundary to which he holds title, although it is admitted that due to the nature of both or either they may not remain in place and are not the sub-

ject of actual possession until brought to the surface, because until that occurs there is no way to determine positively that oil or gas does, in fact, lie under a designated boundary.

In the case of *Gain v. South Penn Oil Co.*, 76 W. Va. 769, 86 S. E. 883, L. R. A. 1916B, 1002, a tract of fifty-five acres lying in Doddridge County was leased to the defendant company by the owner of the fee, the lessor's title being subject to a reservation of one-half of the oil and gas lying east of a drain running north and south through the boundary leased. The lease, however, covered all of the oil and gas underlying the entire boundary. After the lease had been in effect a little over nine years the lessee decided to drill, and in preparing to do so discovered that its lease did not embrace one-half the oil and gas lying east of the drain. It then, before drilling, undertook to obtain a lease upon the same terms *pro tanto* as the terms of its existing lease from the owner of the reservation. The lease was refused, the prospective lessor giving as his reason the fact that the lessee declined to pay him a bonus or to agree to drill that part of the entire tract in which he held an interest. The oil company then drilled two producing wells on the part of the leased land lying west of the drain, upon which it held a complete lease, locating both wells near the reservation. The owner of the reservation then proceeded against the lessee and the lessors, alleging fraud, an equitable interest in the oil and gas underlying that part of the tract not included in the reservation and asking that a receiver be appointed to take charge of the two wells drilled on the land lying west of the drain, contending that the wells were fraudulently draining the land east of the drain in which he held one-half of the oil and gas. After proof, the bill of complaint was dismissed by the Circuit Court of Doddridge County, and upon appeal this Court affirmed the decree, stressing in its opinion the compromise agreement or lease covering the reservation that the complainant had refused to execute and the fact that it overcame the allegation of fraud and holding that the reservation withheld no in-

terest in the oil and gas brought to the surface by wells located beyond its boundary.

The appellee here undertakes to distinguish the *Gain* case from this case by the fact that in the one the land was divided into two parcels, whereas, he contends, here the land was merged and operated as a single boundary. We are not of the opinion that in the instant case the land was merged: there was a merger of contractual obligations, the lessors agreeing to treat the two leases as covering one boundary so far as the lessee's obligation to develop was concerned, and the lessee agreeing to divide the payment of royalty on the basis of the fractional acreage interest in the oil and gas.

We believe the *Gain* case is closely analogous to the case at bar, since both involve the ownership of an outstanding interest under an oil and gas lease that had been afforded a fair opportunity to permit the development of the tract in which they held an undivided interest in the oil and gas, and upon their refusal to do so the lessee of the major part of the boundary in which their interest in the oil and gas lay, in order to protect both its own right to explore and the likely property interests of its lessees, determined to drill near the line of that boundary, upon an adjoining tract entirely under lease to it.

In our opinion, the so-called unitization agreement does not effect a merger of title. Under its express terms the leases of the fifty-three acres and of the one hundred and sixteen acres not in conflict with its terms remained in effect. It consolidates only the contractual interests under the leases to the United Fuel Gas Company. Boggess having refused to become a party to the lease of the one hundred sixteen acre tract, acquired no contractual right subject to merger, and by remaining aloof, both from the lease and the unitization agreement, neither instrument affected his interest, either favorably or unfavorably.

We do not mean, of course, to imply that a so-called unitization agreement may be used as an instrument conferring upon a lessee of an undivided interest in the oil and gas of a tract of land the right to unite that boundary

with one or more other boundaries adjoining the first, upon which it holds leases, in disregard of the outstanding undivided interest in the oil and gas underlying the first boundary. All we mean to hold is that a tenant in common, particularly one holding a minor interest in the oil and gas, is not to be allowed, by withholding his consent to the development of the boundary in which his interest lies, to prevent the development of an adjoining tract under a unitization agreement to which he has been given an equal opportunity to become a party and in which his cotenants have all joined.

Based upon the foregoing, we are of the opinion that W. W. Boggess had no equitable interest in the production of either oil or gas from the fifty-three acre tract, and that therefore the decree of the Circuit Court of Jackson County must be reversed and the case remanded. Since it appears from the record before us, however, that M. M. Boggess is the owner of at least a one-ninetieths undivided interest in the oil and gas underlying the one hundred sixteen acres, and that he was not a party to the lease thereof to the United Fuel Gas Company nor to the unitization agreement, and was not made a party to this proceeding, in order that his outstanding interest may not be ignored and disregarded we are of the opinion that before a final decree is entered by the Circuit Court he should be made a party.

*Reversed and remanded.*