## Title to Methane Gas

PACKEL, *Attorney General,* October 31, 1974 —You have advised my office that the Office of State Planning and Development is involved in a comprehensive investigation into the possible use of methane gas as a future source of fuel. Pursuant to this investigation, you have asked my opinion as to the following question: Who has the right to assert legal title to methane gas produced, as between the owner or grantee of existing coal rights, and the owner or grantee of existing gas rights? It is our opinion, and you are so advised, that methane gas is a natural gas and, therefore, the owner or grantee of the gas rights has the right to assert legal title thereto.

It has been the law in Pennsylvania that no person, neither land owner, grantee nor lessee, has absolute title to minerals in place. In this sense, minerals are considered ferae naturae, like a wild animal, and are not subject to absolute ownership until brought under control. This is particularly true of gas, as was stated by the Pennsylvania Supreme Court in Westmoreland & Cambria Nat. Gas Co. v. DeWitt, 130 Pa. 235 (1889):

"Gas, it is true, is a mineral; but it is a mineral with peculiar attributes, which require the application of precedents arising out of ordinary mineral rights, with much more careful consideration of the principles involved than of the mere decisions. Water also is a mineral; but the decisions in ordinary cases of mining rights, etc., have never been held as unqualified precedents in regard to flowing, or even to percolating, waters. Water and oil, and still more strongly gas, may be classed by themselves, if the analogy be not too fanciful, as minerals ferae naturae. In common with animals, and unlike other minerals, they have the power and the tendency to escape without the volition of the owner. Their 'fugitive and wandering existence within the limits of a particular tract is uncertain,' as said by Chief Justice Agnew in Brown v. Vandergrift, 80 Pa. 147, 148. They belong to the owner of the land, and are part of it, so long as they are on or in it, and are subject to his control; but when they escape, and go into other land, or come under another's control, the title of the former owner is gone. Possession of the land, therefore, is not necessarily possession of the gas. If an adjoining, or even a distant, owner, drills his own land, and taps your gas, so that it comes into his well and under his control, it is no longer yours, but his. And equally so as between lessor and lessee in the present case, the one who controls the gas, has it in his grasp, so to speak, is the one who has possession in the legal as well as in the ordinary sense of the word."

The situation you have outlined indicates, however, that coal mine operators must remove methane gas from the mine shafts in order to comply with applicable Federal and State mine safety laws. To do this, they force the methane through a

ventilating system out of the mine and into the atmosphere. In this sense, the coal company has control of the methane gas. The question arises, then, as to whether this control gives title to the methane gas to the coal grantee. This question was answered by our Supreme Court in Chartiers Block Coal Co. v. Mellon, 152 Pa. 286, 296 (1893), wherein the court stated that the "grantee of the coal owns the coal but nothing else, save the right of access to it and the right to take it away." This is not to say, however, that the coal mine operator may not expel methane gas into the atmosphere. To deprive him of this right would, in effect, be depriving him of his access to the coal, since coal cannot be mined without expelling the methane gas from the mine shaft. Thus, the right to mine for coal necessarily includes the right to perform those actions necessary to insure the safety of such mining. Since the coal owner or grantee retains only the right to extract coal, however, the right to access to and economic control of the methane gas belongs to the owner or grantee of the gas rights.

Other jurisdictions are, on the whole, consistent with the law in Pennsylvania. In Texas, legal title is qualified, in that it can only be obtained by having the gas under control. See Halbouty v. Railroad Commission, 357 S. W. 2d 364 (1962). Oklahoma, while noting this common law principle, recognizes that it can and has been altered by legislative enactments. See Bingaman v. Corporation Commission, 421 P. 2d 635 (1966). West Virginia, on the other hand, recognizes absolute title to gas in place, even though said gas is not the subject of possession until extracted: Boggess v. Milam, 34 S. E. 2d 267 (1945). The West Virginia interpretation, however, appears to be the exception rather than the rule.

A tangential question you also have raised is whether methane gas is a natural gas in the accepted sense of that term. It is our conclusion that methane gas must be classified as a natural gas. Under the Gas Operations, Well-Drilling, Petroleum and Coal Mining Act of November 30, 1955, P.L. 756, 52 PS §2102 (10), gas is defined as "any natural, manufactured or by-product gas or any mixture thereof." This necessarily includes methane. Furthermore, in Emerson v. Commonwealth, 108 Pa. 111, 126 (1884), the court defined natural gas as a gaseous fuel "which may be converted into heat by combustion with atmospheric air." As such, the conclusion is inescapable that methane is a natural gas.

Since methane gas is a natural gas, only those owners and grantees of gas rights have the right of access to, and, therefore, economic control of, methane gas. Any attempt by the owners or grantees of coal rights to convert methane to profitable use could be challenged by those individuals who have acquired the gas rights. This being the case, I must conclude that only those persons who own or have obtained the right to extract gas have the right to assert legal title thereto.