461 S.E.2d 844

Mabel F. POWERS, Robert Powers, Jr., Beulah W. Riffle, Osburn R. Riffle, Alva V. Wimer, Marsha Sue Wimer, Gerald Wimer, and Linda Wimer, Plaintiffs Below, Appellants,

v.

UNION DRILLING, INC., A Corporation; Columbia Natural Resources, Inc., A Corporation; Beulah Mullins; and Robert Vincent, Defendants Below, Appellees.

No. 22490.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 24, 1995.

Decided April 14, 1995.

Rehearing Denied June 14, 1995.

Joseph W. Wagoner, Haller & Wagoner, Weston, for appellants.

Robert J. Wallace, Coleman & Wallace, Buckhannon, for Union Drilling.

Benjamin N. Snyder, R. Neal Pierce, Charleston, for Columbia Natural Resources.

Alexander M. Ross, Buckhannon, for appellee Robert Vincent.

WORKMAN, Justice:

Appellants[1] challenge an adverse summary judgment ruling entered by the Circuit Court of Upshur County on December 13, 1993, dismissing their action to recover damages for trespass against Appellees Union Drilling, Inc.[2] and Columbia Gas Transmission Corporation ("Columbia Gas") in connection with oil and gas rights owned by Appellants and the two individually-named Appellees.[3] After examining the issues presented, we affirm the lower court's ruling.

The following facts are undisputed. By deed dated November 17, 1977, Rosetta Wimer conveyed unto Appellants two adjoining tracts of land. One of the tracts contained 18 acres and the other tract was comprised of 89 acres. Mrs. Wimer reserved for herself a life estate and life interest in the two tracts. The deed referencing this transaction was properly recorded and indexed on December 8, 1977. Mrs. Wimer died on January 14, 1987.

---

1. Appellants are Mabel F. Powers, Robert Powers, Jr., Beulah W. Riffle, Osburn R. Riffle, Alva V. Wimer, Marsha Sue Wimer, Gerald Wimer, and Linda Wimer.

2. The record indicates that on January 1, 1988, Union Drilling changed its name to Equitable Resources Exploration, Inc., and that it is now, subsequent to various mergers, known as Union Drilling, a division of Equitable Resources Energy Company.

3. The two individually-named Appellees are Beulah Mullins and Robert Vincent. A review of the record suggests that these individuals possess interests in royalty income only. However, as Union Drilling points out, a resolution of the specific nature of their interests was not required in connection with ruling on the summary judgment motion and accordingly, was not decided below. We similarly do not find it necessary to address this particular issue.

Prior to her death, however, Mrs. Wimer had executed an oil and gas lease with Appellee Union Drilling which covered both the 18–acre and 89–acre tracts now owned by Appellants. This lease was executed on August 31, 1981, and required Union Drilling to engage in development within 2 years from the date of execution to extend the term of the lease. The oil and gas lease provided for pooling with other contiguous lands and for royalty payments based on the ratio of the number of acres owned compared to the total number of acres included in the pooled acreage. Mrs. Wimer's royalty payment under the pooling arrangement was calculated by multiplying the standard 1/8th royalty payment by 107/238.[4]

In reliance on the August 31, 1981, lease agreement, Union Drilling and Columbia Gas filed a declaration of pooling in the office of the Upshur County Commission Clerk. The original pooling declaration included the 89–acre tract now owned by the Appellants and adjoining tracts not owned by Appellants of 81 acres and 50 acres for an aggregate unit of 220 acres. Later, this pooling declaration was amended to include the 18–acre tract also owned by Appellants, making the pooled unit 238 acres as of September 27, 1982.

Union Drilling and Columbia Gas obtained a drilling permit[5] from the state to drill a deep well[6] and later completed a gas well upon the 50–acre tract that was not owned by the Appellants. This well was drilled in the Oriskany formation to a depth of more than 6000 feet and began gas production on March 26, 1982. This well is still being operated as of this date. No other wells have been drilled on the 238–acre tract. Additionally, no oil or gas wells have been drilled on the Appellants' 89–acre or 18–acre tracts.

Appellants are the vested owners of an undivided interest in the 107 acres of oil and gas. They are not parties to any lease agreement with Union Drilling or Columbia Gas. Additionally, Appellants have not granted to Union Drilling or Columbia Gas a right to operate and produce with regard to their 107 acres. Moreover, Appellants do not claim to have any interest in the L.F. Simons tract—the 50–acre tract on which the only operating well is situated.

Appellees Beulah Mullins and Robert Vincent have ratified the lease agreement entered into between Mrs. Wimer and Union Drilling. Appellants were similarly provided with an opportunity to ratify the lease agreement, but have opted not to do so. Appellants have not filed any protest to the drilling or operation of the well at issue although they were aware of the well since before it went into operation.

On April 4, 1988, Appellants filed a complaint in circuit court alleging trespass against Appellees and seeking damages.[7] The theory alleged in the complaint is that the absence of a lease agreement between Appellees and Appellants compelled a trespass when gas was recovered from the pooled drilling unit, even though the well from which the gas was recovered was not on land owned by Appellants. Appellants' trespass argument is predicated on a belief that the an oil and gas operator should be held liable for oil and gas drainage via a well that is situated on another's property. Upon review of the pleadings and memoranda of the parties, the circuit court determined that there were no genuine issues of material fact and granted summary judgment by order

---

4. The 107 represents the total number of acres owned by Mrs. Wimer in the pool whereas the 238 represents the total number of acres in the pool.

5. Appellants contend that Union Drilling and Columbia Gas could not have obtained a drilling permit without making representations "pursuant to Chapter 22, Article 4A and the rules and regulations promulgated pursuant thereto." Appellees maintain, to the contrary, that they did not obtain a permit pursuant to these statutory provisions.

6. A deep well is defined in West Virginia Code § 22C–9–2(12) (1994) as "any well, other than a shallow well, drilled and completed in a formation at or below the top of the uppermost member of the 'Onondaga Group'[.]"

7. In the complaint, Appellants aver that the gas well on the L.F. Simons, Jr., tract has produced oil and/or gas in excess of $500,000 and that Appellees are indebted to Appellants for 107/238ths of the gross production of said well as a result of the alleged trespass.

dated December 13, 1993, to Appellees. This appeal challenges the trial court's granting of summary relief.

Appellants frame the issue presented as:

Whether the creator of an oil and gas unit (pooling) who does not hold the leasehold operating rights to part of the acreage placed in the unit, is a trespasser as to the oil and gas upon the acreage upon which it does not have a valid lease; and further what remedy is available to ... [Appellants] for the wrongful taking of their oil and gas.

Appellants contend that the absence of a lease agreement between themselves and Union Drilling impelled the occurrence of a trespass when gas was removed from the pooled unit. In support of their position, Appellants rely heavily on the enactment of certain oil and gas conservation statutes in 1972. *See* W.Va.Code §§ 22C–9–1 to –16 (1994) (formerly W.Va.Code §§ 22–4A–1 to –15 (1972)). They advance the argument that these conservation statutes supersede the common law relied on by Appellees.

Appellees observe that the circuit court had to make two separate inquiries in resolving the entitlement of a summary judgment award. First, the court had to determine whether the Appellees were required to include the lands owned by Appellants in a unitization or pooling. Then, if the first question was resolved in the negative, the court had to decide whether the Appellees had any liability in trespass to the Appellants as land owners whose property may have been subject to drainage from a well located on property belonging to other individuals. In resolving the issues before us, we similarly follow this two-pronged analysis.

## I.

■ The first issue requires analysis of the language set forth in West Virginia Code § 22C–9–7 (formerly W.Va.Code § 22–4A–7) to determine whether the issue of pooling is voluntary or mandatory as Appellants contend. The relevant portions of West Virginia Code § 22C–9–7 provide:

(a) Drilling units.

(1) After one discovery deep well has been drilled establishing a pool, an application to establish drilling units *may* be filed with the commissioner by the operator of such discovery deep well or by the operator of any lands directly and immediately affected by the drilling of such discovery deep well, or subsequent deep wells in said pool, ...

. . . .

(b) Pooling of interests in drilling units.

(1) When two or more separately owned tracts are embraced within a drilling unit, or when there are separately owned interests in all or a part of a drilling unit, the interested persons *may* pool their tracts or interests for the development and operation of the drilling unit. *In the absence of voluntary pooling and upon application of any operator having an interest in the drilling unit, and after notice and hearing,* the commissioner shall enter an order pooling all tracts or interests in the drilling unit for the development and operation thereof and for sharing production therefrom. . . .

W.Va.Code § 22C–9–7(a)(1), (b)(1) (emphasis supplied).

Much of Appellants' argument is predicated on an assumption that the statutory provisions above-quoted are compulsory in nature. According to Appellants, the procedures of West Virginia Code § 22C–9–7 "provide[ ] for forced inclusion in a unit." We do not reach the same conclusion. As Appellees emphasize, neither in 1982 nor currently, have the provisions found in West Virginia Code §§ 22C–9–1 to –16 contained any provisions making it mandatory for an oil and gas developer to establish a drilling unit or pool pursuant to statute before it can drill a well.[8]

---

8. The rules promulgated pursuant to this statute similarly lack any provisions requiring, or even suggesting, the mandatory formation of a drilling unit or pooling of surrounding interests in oil and gas around drilling units. *See* 39 W.Va. C.S.R. § 39–1–1 to –6.10. Rather, as Appellee Columbia Gas notes, these regulations provide for voluntary applications and hearings and are crafted to provide flexibility dependent upon actual field conditions. *See id.* at § 39–1–4.2 (imposing discretion in commissioner regarding spacing requirements).

■ The language of West Virginia Code § 22C–9–7(a)(1) with regard to drilling units is clearly stated in discretionary terms. That subsection provides that "[a]fter one discovery deep well has been drilled establishing a pool, an application to establish drilling units *may* be filed with the commissioner...." W.Va.Code § 22C–9–7(a)(1) (emphasis supplied). The legislators' choice of the term "may" leaves no doubt that availment of the procedures for establishing drilling units was intended to operate in a discretionary, rather than an obligatory, manner. *See id.* As this Court has repeatedly recognized, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl.Pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). Thus, we agree with Appellees that no compulsory unitization is mandated by West Virginia Code § 22C–9–7(a).

Similarly, the language found in West Virginia Code § 22C–9–7(b)(1) which addresses the pooling of interests in drilling units is also stated in voluntary, as opposed to, mandatory terms. Again, the statutory drafters chose the term "may" rather than shall with regard to pooling of interests. *See* W.Va. Code § 22C–9–7(b)(1). Moreover, as Appellees have observed, the language of West Virginia Code § 22C–9–7(b)(1) expressly provided Appellants with an opportunity of which they chose not to avail themselves. Appellees could have applied to the Oil and Gas Conservation Commissioner ("Commissioner") to seek an order pooling the tracts in which they had an ownership interest with the lands on which the operating well was placed. The statute permits an "operator" to so apply and the term "operator" is defined as including the owner of oil and gas rights in the event there is no oil and gas lease in existence with respect to a specific tract. *See id.* and W.Va.Code § 22C–9–2(a)(4).

■ After examining these statutory provisions, we conclude that the provisions of West Virginia Code § 22C–9–7, concerning application to the Commissioner upon the drilling of one deep well for the establishment of drilling units and the pooling of interests in drilling units, are discretionary only. The invocation of those statutory provisions can only be sought through express application to the Oil and Gas Conservation Commission ("Commission").

## II.

■ The second issue concerns whether a trespass occurred by virtue of possible drainage from Appellants' lands attendant to the removal of gas from the L.F. Simons tract. An analogous issue was addressed in *Boggess v. Milam*, 127 W.Va. 654, 34 S.E.2d 267 (1945), in which we reversed an award of summary judgment to an individual claiming an equitable interest in connection with the removal of oil and gas from an adjacent 116–acre tract of land. The plaintiff owned a one-tenth mineral interest in a 53–acre tract, but refused to grant a lease to the operator or to participate in the unitization agreement signed by the owners of an adjacent 116–acre tract. After considering two divergent theories [9] on the ownership of mineral rights, we stated:

It is difficult to perceive how the complainant, under either of the divergent theories that this Court has applied to the ownership of oil and gas, can claim a legal or an equitable interest to the oil and gas produced from the fifty-three acre tract. As a matter of fact, his actual ownership of oil and gas underlying the one hundred sixteen acre tract must be regarded as conjectural because in the absence of actual production nothing beyond a high degree of likelihood is shown.... We have been unable to find a case in which, with no contractual obligation to be considered, the owner of land has been held to have an interest, legal or equitable, in the oil and gas underlying adjoining or adjacent lands in which he holds no title.

On the contrary, the recent decisions are all to the effect that the owner of the fee is

---

**9.** We explained in *Boggess* that: "Our first cases seem based upon the theory that oil and gas are both of an inherently migratory or vagrant nature, and our later cases upon the notion that each has a fixed situs until disturbed or released by the act of man." 127 W.Va. at 659, 34 S.E.2d at 269.

vested with title in the oil and gas underlying the boundary to which he holds title, although it is admitted that due to the nature of both or either they may not remain in place and are not the subject of actual possession until brought to the surface, because until that occurs there is no way to determine positively that oil or gas does, in fact, lie under a designated boundary.

*Id.* at 659–60, 34 S.E.2d at 269–70.

■ We announced in *Boggess,* what is referred to as the common law rule of capture, in holding that:

The owner of a minority interest in the oil and gas underlying a tract of land, the other interests in which are under lease, who refuses to execute the lease binding his cotenants and a unitization agreement embracing the tract mentioned and an adjoining boundary in which he has no interest and which is under lease to the same lessee, neither the lease nor the unitization agreement being under attack, has no equitable interest in the production of a well drilled by the lessee upon the adjoining boundary.

*Id.* at 654, 34 S.E.2d at 267, syllabus.

■ As the Fourth Circuit Court of Appeals explained in *Trent v. Energy Development Corp.,* 902 F.2d 1143 (4th Cir.1990), West Virginia recognizes the venerable common law doctrine of capture: '[Oil and gas] belong to the owner of the land, and are part of it, so long as they are on it or in it subject to his control; but when they escape and go into other land, or come under another's control, the title of the former owner is gone. *If an adjoining owner drills his own land, and taps a deposit of oil or gas, extending under his neighbor's field, so that it comes into his well, it becomes his property.*'

*Id.* at 1147 (quoting *Brown v. Spilman,* 155 U.S. 665, 670, 15 S.Ct. 245, 247, 39 L.Ed. 304 (1895)) (emphasis supplied).

■ Appellants argue that with the enactment of the oil and gas conservation statutes

now found in Chapter 22C of the West Virginia Code, the applicability of the common law rule of capture enunciated in *Boggess* is "highly suspect." We disagree. The rule of capture has a long-standing history in West Virginia and the statutory provisions enacted in Chapter 22C of the West Virginia Code do not supersede or eviscerate this common law rule. What the statutes do is to provide individuals like Appellants with a mechanism by which they can participate in oil and gas removal from a deep well which is located on adjacent property and may affect their interests through possible drainage. Appellees concede that once the Commissioner has been requested to establish a pool and subsequent pooling and spacing rules are established pursuant to West Virginia Code § 22C–9–7, the rule of capture is suspended. Appellants, however, chose not to avail themselves of their right to petition the Commissioner for the purpose of seeking to invoke the provisions of West Virginia Code § 22C–9–7. Rather than seeking administrative remedies set forth in Chapter 22C or participating voluntarily in the lease or pooling agreements by ratification, the Appellants chose to bring suit under a trespass theory. In doing so, they voluntarily subjected themselves to the common law rule of capture.

After fully examining the issues at hand, we conclude that the circuit court correctly determined that no trespass occurred by virtue of possible drainage of Appellants' mineral interests from a well located on property separate from that owned by Appellants. Appellants were provided with the same opportunity to ratify the terms of the lease and pooling agreements entered into between Union Drilling and Mrs. Wimer. They opted not to do so, apparently under the mistaken notion that they would be able to bargain for an increased royalty payment.[10]

Based on the foregoing, the decision of the Circuit Court of Upshur County is hereby affirmed.

Affirmed.

---

**10.** Appellants argue that they should have had the right to bargain for a bonus, the amount of

royalty, and the value of the working interest.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.